UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MIDLAND NATIONAL LIFE INSURANCE COMPANY, )<br>)<br>    Plaintiff, )<br>)<br>        v. )<br>)<br>ASH FINANCIAL HOLDINGS GROUP, INC., )<br>ASH BROKERAGE CORPORATION, )<br>TIMOTHY ASH, SUN LIFE ASSURANCE )<br>COMPANY OF CANADA, and SUN LIFE )<br>ASSURANCE COMPANY OF CANADA (US), )<br>)<br>    Defendants. ) | CAUSE NO. 1:06-CV-66 |

## OPINION AND ORDER

This matter is before the Court on the Motion for Leave to File an Amended Complaint filed by the Plaintiff, Midland National Life Insurance Company, on April 30, 2007. (Docket # 125.) The Defendants, Sun Life Assurance Company of Canada and Sun Life Assurance Company of Canada  (U.S.) (collectively, "Sun Life"), filed a response, and Midland has filed a reply.[1] (Docket # 127-28.)  For the reasons provided, Midland's motion will be GRANTED.

### I. FACTUAL BACKGROUND

The Court assumes that the reader has some familiarity with this case, and therefore the following background is somewhat abbreviated. The case arose out of Midland's purchase of all

---

[1] Defendants Ash Financial Holdings Group, Inc., Ash Brokerage Corporation, and Timothy Ash did not file a brief opposing the motion.

the stock in Clarica Life Insurance Company-US ("Clarica US"), a provider of life insurance policies, from Clarica Life Insurance Company ("Clarica Canada"), Sun Life's predecessor.[2] During the negotiations, Sun Life purportedly represented to Midland that Ash Brokerage Corporation had performed underwriting services for Clarica US. In fact, on a number of policies that Ash Brokerage had underwritten, Clarica US obtained reinsurance, ceding to reinsurers part of the liabilities that it assumed under these policies.

Additionally, at the time Midland negotiated the purchase, Clarica US owned 85% of Ash Brokerage's stock. Because Midland was not interested in acquiring Clarica US's interest in Ash Brokerage, that entity was excluded from the sale and was therefore named as an "Excluded Company" in the Stock Purchase Agreement ("Clarica SPA"). The Clarica SPA also contained an indemnification provision, whereby Sun Life agreed to indemnify and hold Midland harmless against:

> Any Loss, liability, debt or claim . . . asserted against or incurred by . . . [Midland] pertaining to, arising out of or resulting from (i) any . . . Excluded Company . . . [or] (iii) any employee, officer, shareholder, agent, contractor contracting party with or customer of such company or business.

(Compl. ¶ 28.) Midland claims that Sun Life's representation that Ash Brokerage performed underwriting services for Clarica US and its promise to indemnify Midland for all claims "pertaining to, arising out of or resulting from" Ash Brokerage were material to Midland's decision to enter into the Clarica SPA, and Midland would not have entered into the Clarica SPA otherwise.

---

[2] While Midland was negotiating the purchase of Clarica US from Clarica Canada, Sun Life acquired the common stock of Clarica Canada, and eventually the two were amalgamated into one legal entity. For ease of reference, Sun Life and Clarica Canada are referred to collectively as "Sun Life."

When Midland received several death claims on large life insurance policies allegedly underwritten by Ash Brokerage, the reinsurers who had contracted with Clarica US questioned the underwriting of those policies, as well as other policies underwritten by Ash Brokerage. Eventually, several other reinsurers refused to pay their share of reinsurance on policies purportedly underwritten by Ash or reserved their rights with respect to claims made under those policies. Midland then notified Sun Life that it sought indemnification under the Clarica SPA for the claims relating to Ash Brokerage's underwriting. Sun Life refused to indemnify Midland, and instead it filed a declaratory judgment action against Midland and Ash Brokerage in the United States District Court for the District of Massachusetts, a case subsequently dismissed.

On March 7, 2006, Midland filed a Complaint here, alleging, among other things, that Sun Life had breached the contract to indemnify Midland for the losses sustained as a result of Ash Brokerage's improper underwriting. (Compl. Counts II, IV.) Midland now contends that it should be allowed to amend that Complaint because Sun Life has changed its position, as formally revealed in its Amended Answer and Cross Claim (Docket # 117), by asserting that Ash Brokerage did not perform underwriting for Clarica US.[3] Specifically, Midland proposes to add a claim, in the alternative to its breach of contract claim, that Sun Life fraudulently induced it to enter into the Clarica SPA. Midland's theory is fairly straightforward: either Sun Life's representation that Ash Brokerage underwrote for Clarica US was true, thus triggering the indemnification clause of the Clarica SPA; or Sun Life's representation was false, thus

---

[3] For example, Sun Life now alleges in its affirmative defenses that the Ash Brokerage underwriting team was merely an "alter ego and instrumentality of Clarica US." (Am. Answer and Cross Claim of Defs. Sun Life 31-33.)

3

fraudulently inducing Midland to enter into the Clarica SPA.

Midland maintains that although the deadline for amending the pleadings was September 30, 2006, it had attempted before that date to uncover through discovery the basis for Sun Life's litigation position, yet none of the Defendants had provided any discovery by that deadline. In fact, Midland did not receive discovery from Sun Life until after it filed a Motion to Compel Interrogatory Answers and the Production of Documents from Defendant Sun Life (Docket # 103). Finally, on December 4, 2006, Sun Life served answers to Midland's Interrogatories, revealing that "the underwriting services for which Midland seeks indemnification were performed by or under the supervision of employees of Clarica U.S. and not of Ash Brokerage." (Midland's Mem. of Law in Supp. of Mot. for Leave to File an Am. Compl. Ex. E at 7-11.)

Furthermore, although Sun Life produced some documents on October 4, 2006, Midland's document requests were still a matter of contention in late January 2007. Ostensibly, more discovery has been pursued, and is still being pursued, directed to whether employees of Clarica US or the employees of Ash Brokerage (or Ash Brokerage employees controlled by Clarica US) performed the underwriting for Clarica US.

In opposition, Sun Life contends that the motion comes too late–well after the September 30, 2006, deadline for amending the pleadings imposed by the Court at the August 2, 2006, scheduling conference (Docket # 65)–and that Midland cannot show good cause for such a tardy amendment. Additionally, Sun Life argues that the motion fails to meet the requirements of Federal Rule of Civil Procedure 15(a), as the introduction of this alternative theory would require more discovery and would thus be prejudicial to Sun Life. Sun Life also argues that Midland's claim would be futile in any event because Midland cannot show that it detrimentally

4

relied on Sun Life's alleged fraudulent statement that Ash Brokerage underwrote the policies.

## II. STANDARD OF REVIEW

A party may amend its pleading once as a matter of course at any time before a responsive pleading is served; otherwise, it may amend only by leave of the court or by written consent of the adverse party. Fed. R. Civ. P. 15(a). Leave to amend is freely given when justice so requires. *Id.* However, this right is not absolute, *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002), and can be denied for undue delay, bad faith, dilatory motive, prejudice, or futility. *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Moreover, the requirements of Rule 15 must be read in conjunction with the requirements of Rule 16, because "[o]nce the district court [has] filed a pretrial scheduling order pursuant to [Rule] 16 which establish[es] a time table for amending pleadings that rule's standards [control]." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992); *Kortum v. Raffles Holdings, Ltd.*, No. 01 C 9236, 2002 WL 31455994, at *3 (N.D. Ill. Oct. 30, 2002); *Tschantz v. McCann*, 160 F.R.D. 568, 570-71 (N.D. Ind. 1995). Rule 16 provides in part:

> (b) [The district court] . . . shall, after receiving the report from the parties under Rule 26(f)[,] . . . enter a scheduling order that limits the time (1) to join other parties and to amend the pleadings; (2) to file and hear motions; and (3) to complete discovery . . . . A schedule shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by the Local Rule, by a magistrate judge.

Fed. R. Civ. P. 16(b). Thus, a party seeking to amend a pleading after the date specified in a scheduling order must first show "good cause" for the amendment under Rule 16(b); then, if

good cause is shown, the party must demonstrate that the amendment is proper under Rule 15. *Tschantz*, 160 F.R.D. at 571. "A court's evaluation of good cause is not co-extensive with an inquiry into the propriety of the amendment under . . . Rule 15." *Id.* (quoting *Johnson*, 975 F.2d at 609).  Rather, the good cause standard focuses on the diligence of the party seeking the amendment. *Id*.  In other words, to demonstrate good cause, a party must show that despite its diligence, the time table could not reasonably have been met. *Id.*

### III. DISCUSSION

Since the deadline for amending the pleadings has passed, Midland must first show good cause for extending the deadline under Rule 16 and then must show that the amendment is proper under Rule 15. Ultimately, Midland is successful on both fronts, demonstrating first that it has good cause under Rule 16 for filing its Motion after the pleading deadline and second, that the amendment is proper under Rule 15.

**A. Midland Has Shown Good Cause for Filing Its Motion After the Pleading Deadline**

Midland convincingly demonstrates good cause because the precise contours of Sun Life's litigation position were not revealed until months after the pleading deadline, and then only became apparent through tardy discovery responses and Sun Life's February 2, 2007, Amended Answer. Specifically, Midland recounts, and without serious opposition from Sun Life, that by the September 30, 2006, deadline, no Defendant had provided discovery responses. In fact, Midland posed interrogatories well-before the deadline, asking Sun Life to detail the factual basis for who actually did the underwriting, Clarica US or Ash Brokerage. *See Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) ("Rule 16(b)'s

6

'good cause' standard primarily considers the diligence of the party seeking amendment." (quoting *Johnson*, 975 F.2d at 609). The discovery process, however, has not been altogether smooth, and Midland did not receive its first discovery responses from Sun Life until December 4, 2006, and then only after it filed a Motion to Compel.[4]

The difficult process of discovery experienced by Midland here is not the sole basis for good cause; the resulting delay was compounded by Sun Life's Amended Answer, with serially-stated affirmative defenses hinging on the proposition that if the Ash Brokerage "underwriting team" did actually underwrite some policies, they did so as a mere an alter ego and instrumentality of Clarica US. That type of nuance-laced assertion, and the tardy discovery responses that Midland finally obtained, led Midland to believe that an alternative claim, that is, fraudulent inducement, should be and could be advanced. Because the information with which to plead this claim was not known until Midland received some discovery responses, and because it was only recently that Midland could have known that Sun Life was maintaining, for example, an "alter ego" theory (*see supra* note 3), ostensibly in an effort to side-step the indemnification clause, Midland was not in a position to amend, even with due diligence, at any materially earlier date. *Cf. id.* (finding that the plaintiff failed to show good cause because it "was, or should have been, aware" of the facts underlying the claim it wished to add prior to the amendment deadline); *see also Stallings v. Union Pac. R.R.*, No. 01 C 1056, 2003 WL 21317297, at *5 (N.D. Ill. June 6, 2003) (noting that "only through ongoing discovery and investigation was [the plaintiff] able

---

[4] Both parties ostensibly concede that the ongoing and unusually large document discovery in this case has been pursued with diligence, noting in a joint motion to extend the discovery deadline filed March 29, 2007, (Docket # 119) that over five million pages of documents have been produced thus far.

7

to determine the validity of [the proposed amendment]"). Consequently, good cause has been shown.

### B. The Amendment Should Be Allowed Under Rule 15(a)

<u>1. Permitting Midland to Amend Its Complaint Will Not Unduly Prejudice Sun Life</u>

Although Sun Life argues that allowing Midland to amend this late in the proceedings is prejudicial, they offer little more in support of that proposition than the conclusory assertion that already conducted discovery will need to be augmented. S*ee Dubicz v. Commonwealth Edison Co.*, 377 F.3d. 787, 792-93 (7th Cir. 2004) (finding that the defendant's argument opposing the motion to amend was insufficient because "[t]he case for prejudice is stated . . . only in the most conclusory of terms"). The closest that Sun Life comes to offering any particulars regarding prejudice is the assertion that if the amendment is allowed, some witnesses will need to be re-deposed, but it offers no particulars or reasons in support.[5] *See id.* (noting that although the defendant argues "that it was prejudiced by the delay because memories of witnesses have faded and documents have been lost[,] . . . [n]o particular witnesses or documents are identified by [the defendant]"). Accordingly, the Court is left with nothing but a naked claim of prejudice, which alone is insufficient to deny a motion to amend. *See id.*

Moreover, Sun Life's claim of prejudice, apparently linked to the notion that more discovery will be needed, seems slightly over-blown. Considerable discovery is still outstanding, and the discovery which has occurred has already explored to some degree the fraudulent inducement claim, that is, whether Ash Brokerage underwrote policies for Clarica US. *See*

---

[5] These same deficiencies apply to Sun Life's argument that written discovery will also need to be augmented.

*Jackson v. Ret. Plan for the Cont'l Corp.*, No. 03 C 9399, 2005 WL 1162969, at *2 (N.D. Ill. Apr. 28, 2005) (granting leave to amend complaint because "discovery in the case is still ongoing"). Indeed, Midland represents that since the filing of the current motion, some discovery has already been conducted in anticipation of the new claim.

Furthermore, although Sun Life mentions that new discovery on the issue of damages would need to be conducted if Midland were permitted to add a claim of fraudulent inducement, that discovery can easily be accommodated since it will largely be governed by expert testimony, which is not scheduled to occur until later in the case. Furthermore, the remaining issues surrounding damages will likely be charted and governed by the extensive document production that has already occurred. *See Serfecz v. Jewel Food Stores, Inc.*, No. 92 C 4171, 1997 WL 543116, at *5 (N.D. Ill. Sept. 2, 2007) (granting leave to amend because no additional discovery was necessary); *Stallings*, 2003 WL 21317297, at *5.

In short, Sun Life has not demonstrated any undue prejudice arising from the amendment, at least nothing that rises to the level of denying what should otherwise be "freely given." *Foman*, 371 U.S. at 182.

### 2. It Would Not Be Futile for Midland to Assert a Fraudulent Inducement Claim

Finally, aside from undue delay and prejudice, Sun Life argues that the proposed amendment would be futile, or more precisely stated, illogical. Of course, a motion to amend the pleadings should not be denied based on futility unless it is "clearly futile," which means that the amendment could not withstand a motion to dismiss. *Chi. Dist. Council of Carpenters Pension Fund v. R & R Flooring, Inc.*, No. 98 C 4247, 2000 WL 336515, at *2 (N.D. Ill. Mar. 28, 2000) (citing *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997);

9

*Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)). In that regard, a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency, not the merits, of the complaint. *Autry v. N.W. Premium Servs., Inc*., 144 F.3d 1037, 1039 (7th Cir. 1998). When reviewing a motion to dismiss, the court accepts all well-pleaded facts as true and views any reasonable inferences from them in the light most favorable to the plaintiff, dismissing a claim only when it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

As Sun Life sees it, Midland is unable to prove any set of facts that would establish that it "detrimentally relied" on Sun Life's alleged fraudulent statement, an essential element of a fraudulent inducement claim. The supposed illogic of Midland's claim goes like this: it first contends that Sun Life's statement that Ash Brokerage underwrote the policies induced it to obtain an indemnity clause in the Clarica SPA for protection from any liability or claims arising from Ash Brokerage's underwriting. But that contention cannot be detrimental reliance as a matter of law because if Ash Brokerage did not underwrite the policies (as Sun Life now seemingly contends), then there is no loss from Ash Brokerage's actions, the indemnity clause does not apply, and Midland is in no worse position than if it had never asked for one.

However, Sun Life's argument attacks the merits, and not the sufficiency, of Midland's proposed amendment. *See Autry*, 144 F.3d at 1039. Clearly, the proposed Amended Complaint makes out a claim of fraudulent inducement with the requisite particularity to withstand a motion to dismiss if we view it, as we must, in a light most favorable to Midland. *See Conley*, 355 U.S. at 45-46. In that regard, the elements of fraudulent inducement are no different from the elements of any action for fraud, which are: "(1) a material misrepresentation of past or existing facts; (2)

10

made with knowledge or reckless ignorance of falsity; (3) which caused the claimant to rely upon the misrepresentation to the claimant's detriment." *Siegel v. Williams*, 818 N.E. 2d 510, 515 (Ind. Ct. App. 2004) (citing *Jackson v. Blanchard*, 601 N.E. 2d 411, 418 (Ind. Ct. App. 1992)). Here, Count VII of the proposed Amended Complaint makes out such a claim with the requisite particularity, a contention that Sun Life apparently does not challenge.

Indeed, accepting all well-pleaded facts as true and viewing any reasonable inferences in a light most favorable to Midland, the Court cannot say that Midland did not detrimentally rely on Sun Life's alleged fraudulent statement. As alleged in paragraphs 102-104 of the proposed Amended Complaint, Midland says that it incurred losses because it relied on Sun Life's fraudulent statements that Ash Brokerage underwrote the policies and that any liabilities incurred under those policies would accordingly be covered under the indemnity clause.[6] The merits of this proposition. of course, can be attacked by Sun Life at the summary judgment stage. In the meantime, justice requires that Midland be given leave to amend so that they may assert, at least alternatively, their fraudulent inducement claim. *See Foman,* 371 U.S. at 182.

## IV. CONCLUSION

Based on the foregoing, justice requires that Midland be granted leave to file their

---

[6] As *Corbin on Contracts* recounts, the injury requirement of such a claim falls into one of three categories: (1) the defrauded party obtains what is bargained for but because of the misrepresentation it is worth less than the party had reason to expect; (2) the defrauded party obtains something substantially different from what the party was led to expect; (3) the defrauded party obtains what is bargained for, and it is as valuable as the party was led to expect.
7 Joseph M. Perillo, *Corbin on Contracts* § 28.16 (rev. ed. 2002). Sun Life's argument ignores the first two categories, either of which is sufficient to base a claim, and instead relies on the third, which necessarily imposes, at least here, a fact-based inquiry that cannot be addressed on a motion to amend.

Amended Complaint. Accordingly, the Motion to Amend (Docket # 125) is GRANTED, and the Clerk is directed to show the Amended Complaint filed. The Defendants are to file an Answer to the Amended Complaint within ten days.

    SO ORDERED.

    Enter for June 15, 2007.

                                        S/Roger B. Cosbey
                                        Roger B. Cosbey
                                        United States Magistrate Judge